IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                                                  PLAINTIFF

V.                              CASE NO. 5:22-CR-50043-001

DAI-KWON ARMOND                                                                           DEFENDANT

### MEMORANDUM OPINION AND ORDER

The Government has charged Defendant Dai-Kwon Armond in a three-count Indictment (Doc. 1). Counts One and Two charge Mr. Armond with knowingly and intentionally distributing a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (Doc. 1, p. 1). Count Three charges Mr. Armond with knowingly and intentionally distributing a mixture or substance containing a detectable amount of fentanyl, in violation of the same statutes. *Id.* at p. 2. This matter is scheduled for a jury trial to commence on November 6, 2023. In anticipation of trial, Mr. Armond filed a Motion in Limine to Prevent Use of Statements from Plea Hearing (Doc. 42) and the Government filed a Response (Doc. 50). As explained below, Defendant's Motion is **DENIED**.

### I. BACKGROUND

The procedural history of this matter is briefly summarized below.[1] The Government filed its Indictment (Doc. 1) on June 15, 2022, and a jury trial was initially set for December 5, 2022. *See* Doc. 11. The Court has since continued the trial five times in response to six motions to continue from defense counsel.

---

[1] For a more detailed procedural history, see the Court's recent Order denying Defendant's Sixth Motion for Continuance (Doc. 35).

1

On the eve of the third trial date, Mr. Armond notified the Court that he had entered into a plea agreement with the Government, signed on March 27, 2023, in which he agreed to plead guilty to Count Three of the Indictment—the fentanyl distribution charge. (Doc. 51-1). A change of plea hearing was thus scheduled for April 7, 2023. But during the hearing, Mr. Armond expressed tentativeness about his decision to change his plea to guilty. The Court explained that although Mr. Armond had an absolute right to maintain his not guilty plea, the potential consequences of breaching his Plea Agreement could include the use at trial of admissions he made in the agreement and related proceedings. *See* Doc. 26, pp. 9–11. After conferring privately with counsel during a recess, Mr. Armond ultimately elected to maintain his not guilty plea and proceed to trial despite the potential consequences of his breach. *See id.* at pp. 11–12.

The trial was initially rescheduled to April 17, 2023. But in the wake of the aborted plea hearing and additional motions to continue, the trial was ultimately rescheduled for November 6, 2023 with the warning that "**NO FURTHER CONTINUANCES WOULD BE GRANTED**." (Doc. 32 (emphasis in original)). Nevertheless, on October 12, 2023, Mr. Armond filed a sixth motion to continue (Doc. 34). The Court denied that motion, finding that he had not stated good cause for further delay. (Doc. 35). Mr. Armond has more recently filed a motion for reconsideration of his sixth motion to continue (Doc. 44). The Court has not yet ruled on that motion and does not do so here. Pending that Motion, trial remains set to commence on November 6th.

In anticipation of trial, Mr. Armond filed, *inter alia*, a Motion in Limine to Prevent Use of Statements from Plea Hearing (Doc. 42), and the Government filed a Response (Doc. 50). In his Motion, Mr. Armond argues that "[t]he Government plans to use statements made in the change of plea hearing against [him] in trial even though the guilty plea was never accepted by this Court" and that "[d]oing so not only conflicts with the Federal Rules of Evidence's stance on the issue, but also is highly prejudicial to [him]." (Doc. 42, p. 2). "In the interest of justice," Mr. Armond asks the Court to "disallow the Government from using any statements he made in the change of plea hearing . . . ." *Id.*

In its Response, the Government broadly counters that, pursuant to a waiver of the Defendant's protections under Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f) that was included in the Plea Agreement, "the Government shall be allowed to use and introduce into evidence: 'admissions against interest, both oral and written, made by the Defendant to any person,' 'statements made by the Defendant during the change of plea hearing,' and 'the factual basis set forth in the Plea Agreement.'" (Doc. 50, p. 5 (citing Doc. 51-1, ¶ 10)). Specifically, the Government explains that it "plans primarily to use statements made by the Defendant in the plea hearing in support of its legal argument that the Defendant entered into the Plea Agreement knowingly and voluntarily and that a breach of such an agreement constitutes a waiver of any rights Defendant would otherwise be entitled to under the Federal Rules of Evidence." *Id.* at p. 4, n.1. The Government "respectfully request[s] a pre-trial order deeming the [P]lea [A]greement and such statements admissible at trial,

3

including in the Government's case-in-chief." *Id.* at p. 9. Mr. Armond's Motion has thus been fully briefed and is ripe for consideration by the Court.

## II.  LEGAL STANDARD

The question presented is whether admissions made by Mr. Armond during the change of plea hearing and in the Plea Agreement itself are admissible as evidence at trial. "The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410." Fed. R. Crim. P. 11(f). Rule 410 provides that "evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions: a guilty plea that was later withdrawn"; "a statement made during a proceeding" on a guilty plea "under Federal Rule of Criminal Procedure 11"; or "a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea." Fed. R. Evid. 410(a). The admissions at issue thus fall directly within the protections of Rule 410. However, "[t]he Supreme Court has recognized that the protections offered by Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11[f] are presumptively waivable." *United States v. Young*, 223 F.3d 905, 909 (8th Cir. 2000) (citing *United States v. Mezzanatto*, 513 U.S. 196, 210 (1995)). The narrow issue is thus whether Mr. Armond waived these protections in the Plea Agreement.

Eighth Circuit precedent instructs the Court to determine whether a defendant waived his Rule 410 protections in a plea agreement through a two-step inquiry. The first step is to determine whether a presumptively enforceable Rule 410 waiver is included in the plea agreement, reading the agreement as a contract with constitutional

implications. *See United States v. Miller*, 295 F.3d 824, 827 (8th Cir. 2002) (internal quotation omitted) (holding that "[a] plea agreement is contractual in nature and generally governed by ordinary contract principles"); *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003) (internal quotation omitted) (explaining, however, that the "[a]pplication of these contract principles is tempered by the constitutional implications of a plea agreement"). Applying this framework, like a contract, a plea agreement becomes binding at the time it is signed by the defendant. *United States v. Washburn*, 728 F.3d 775, 781 (8th Cir. 2013). But "[a]ny ambiguities in the agreement are construed against the government." *United States v. Sisco*, 576 F.3d 791, 795 (8th Cir. 2009) (citing *Andis*, 333 F.3d at 890). If a defendant signs a plea agreement that contains a Rule 410 waiver and the waiver is unambiguous, it is presumptively enforceable under ordinary contract principles. *See United States v. Ridings*, 75 F.4th 902, 906 (8th Cir. 2023) (upholding a judgment from this Court that, *inter alia*, a plea agreement in which defendant waived the protections under Rule 410 was admissible into evidence at trial).

The second step is to determine whether the defendant knowingly and voluntarily entered into the plea agreement. *Mezzanatto*, 513 U.S. at 210 ("[A]bsent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable."). At this step, the Court must "look to the circumstances surrounding the signing and entry of the plea agreement to determine whether the defendant willfully agreed to its terms." *Young*, 223 F.3d at 909 (internal quotation omitted). For example, a plea is knowing and voluntary where a defendant confirms on the record that he

signed the plea agreement and understood all the information within the agreement. *United States v. Hall*, 877 F.3d 800, 805 (8th Cir. 2017). However, "a dialogue between the district court and the defendant regarding the knowing and voluntary nature of a plea agreement that usually occurs at a change of plea hearing is not a prerequisite for a valid waiver of a particular right." *Washburn*, 728 F.3d at 781–82 (internal quotation omitted). Other circumstances may also be considered.

In sum, if a defendant knowingly and voluntarily entered into a plea agreement that included a Rule 410 waiver, then the waiver is enforceable. This means the admissions made by a defendant in a written and fully executed plea agreement, as well as his statements during a change of plea hearing, are admissible at trial. Under *Mezzanatto* and *Young*, such admissions can be used as substantive evidence in the Government's case-in-chief, and they can also be used to impeach a testifying defendant's credibility on cross-examination. *See United States v. Kowalewski*, WL 6667127, at *5 (N.D. Ga. Nov. 24, 2014) (citing, *inter alia*, *Young*, 223 F.3d at 910–11) ("*Mezzanatto* approved of using of plea statements to impeach a defendant where the defendant had waived the exclusionary provisions of Rule 410, and other courts [including the Eighth Circuit in *Young*] have now extended *Mezzanatto*'s holding to the government's use of plea statements in its case-in-chief where the defendant has waived his objection to their admissibility under Rule 410.").

### III. DISCUSSION

#### A. The Plea Agreement Contains a Presumptively Enforceable Rule 410 Waiver

The Court's analysis begins with the text of the agreement, read as a contract. Paragraphs 9 and 10 fall under the heading, "EFFECTS OF BREACH OF THIS

AGREEMENT BY DEFENDANT." Paragraph 9 states: "The Defendant agrees that if *after signing* this Plea Agreement the Defendant . . . violates any term of this Plea Agreement . . . or attempts to withdraw from this Plea Agreement, this shall constitute a breach of this Plea Agreement . . . ." (Doc. 51-1, ¶ 9 (emphasis added)). Paragraph 10 continues:

> The Defendant further agrees *that a breach of any provision of this Plea Agreement shall operate as a WAIVER of Defendant's rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence* and the United States shall be allowed to use and to introduce into evidence any one or more of the following: admissions against interest, both oral and written, made by the defendant to any person; statements made by the Defendant during his change of plea hearing; the factual basis set forth in the Plea Agreement . . . .

*Id.* at ¶ 10 (emphasis added). Of final importance to this Motion, Paragraph 1 of the Plea Agreement states: "The Defendant, Dai-Kwon Armond, hereby agrees to plead guilty to Count Three of the Indictment . . . ." *Id.* at ¶ 1. The Eighth Circuit instructs this Court to analyze the text of a plea agreement using ordinary contract principles. *See, e.g.*, *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003). One such principle guides the court to read the agreement as a whole. So read together, the Court finds that Paragraphs 9 and 10 constitute an unambiguous Rule 410 waiver, and Paragraph 1 constitutes a term that, if breached, would trigger this waiver.

In his Motion, Mr. Armond argues that Paragraph 9 is ambiguous because it does not make clear "how an attempt to withdraw from the [P]lea [A]greement is defined." (Doc. 42, p. 2). But this argument misreads the text of the agreement and the law that governs it. As a point of clarification, the Court returns to the conception of a plea agreement as a contract with constitutional implications. A plea agreement operates as

7

a contract insofar as it is binding on the parties to its terms when they sign it. But a plea agreement is not binding on the Court. Rather, the separate, constitutional implications of pleading guilty before the Court (e.g., waiving a defendant's rights to a jury trial under the Sixth Amendment) are illustrated by the separate procedures for (1) considering, accepting, and withdrawing a *plea* of guilty to the Court, all of which are governed by Federal Rule of Criminal Procedure 11(b) and (d), and (2) for plea agreements and the "admissibility or inadmissibility of a plea, a plea discussion, and any related statement," which are governed by Rule 11(c) and (f).

Here, Paragraph 9 specifies that the Plea Agreement becomes binding when it is signed by the parties, and this term is consistent with Eighth Circuit precedent. *See United States v. Washburn*, 728 F.3d 775, 781 (8th Cir. 2013) (holding that a plea agreement becomes binding at the time it is signed by the defendant). Therefore, the Plea Agreement was binding on Mr. Armond as of March 27, 2023, when he signed it, even though he had not yet pled guilty in open court. *Id.*

The act of pleading guilty is related to the parties' negotiated plea agreement, but the plea itself is a distinctly separate event.  Under Rule 11, Mr. Armond has an absolute right to persist in a plea of not guilty and enforce his Sixth Amendment right to a jury trial—regardless of whether he has previously bound himself contractually to the terms of the plea agreement.  In other words, Mr. Armond's right to maintain his not guilty plea does not rescind the plea agreement nor absolve the Government's contractual remedies for breach of the plea agreement.

In this regard, Paragraph 9 also states that violating "any term" of or attempting to withdraw from the Plea Agreement constitutes a breach by Defendant. Paragraph 1

8

contains such a term, which Mr. Armond was subject to on April 7, 2023, after he signed the agreement, and breached when he decided to maintain his plea of not guilty rather than pleading guilty to Count Three. By his words and actions, Mr. Armond has expressly attempted to withdraw from the agreement.

The text of Paragraph 10 is similarly clear in its warning that "a breach of any provision of this Plea Agreement shall operate as a WAIVER of Defendant's rights under Rule 11(f) . . . and Rule 410 . . . ." This language is unambiguous on its face: by violating the "agree[ment] to plead guilty to Count Three of the Indictment" in paragraph one and attempting to withdraw by maintaining his "not guilty" plea, Mr. Armond breached the agreement under Paragraph 9, thus triggering Paragraph 10's Rule 410 waiver provision.

To the extent Armond contends the plea agreement here is ambiguous, it is without question less ambiguous than the text of the plea agreement upheld in *Young*, the leading case on point in the Eighth Circuit. There, the waiver provision at issue stated: "If the defendant does breach this agreement, he faces the following consequences: [ ] all testimony and other information he has provided at any time to attorneys, employees or law enforcement officers of the government, to the court, or to the federal grand jury, may and will be used against him in any prosecution or proceeding . . . ." *United States v. Young*, 223 F.3d 905, 910 (8th Cir. 2000). The Eighth Circuit held that although the text of the defendant's plea agreement did not contain specific citations to Rule 410 and Rule 11, it was "nonetheless sufficient for a valid waiver." *Id.* at 911. Unlike the *Young* waiver, the waiver at issue here *does* cite to Rule 410 and Rule 11(f), specifically, and contains granular details as opposed to general

descriptions of the admissions that Defendant waived protection from when he signed the agreement. The clarity of the instant waiver thus reaches beyond the requirements of *Young* and its progeny. As such, the Court finds that the Rule 410 waiver in Mr. Armond's Plea Agreement was unambiguous and presumptively enforceable.

### B.  Mr. Armond Knowingly and Voluntarily Entered Into the Plea Agreement

As a threshold matter, Mr. Armond has not advanced any affirmative indication that the agreement was entered into unknowingly or involuntarily. *See Mezzanatto*, 513 U.S. at 210. At all relevant times Mr. Armond was represented by well-experienced counsel. Furthermore, turning to the circumstances surrounding the signing and entry of the Plea Agreement pursuant to *Young*, the Court finds at least two indicia that Mr. Armond willfully agreed to its terms. 223 F.3d at 909. First, as the Government points out in its Response, at the signing stage, "the Defendant signed the Plea Agreement under advice of counsel." (Doc. 50, p. 6). Additionally, the Plea Agreement contains explicit acknowledgments that Mr. Armond read the entire agreement and discussed it fully with his attorney, *see* Doc. 51-1, ¶ 27, and that defense counsel carefully reviewed the agreement with him and discussed with him its legal ramifications, *see id.* at ¶ 28. Under *Young*, these facts indicate that Mr. Armond's waiver of his Rule 410 protections was knowing and voluntary. 223 F.3d at 911 ("Young's waiver of his plea-statement rights was knowing and voluntary," in part because "[h]e was represented by counsel at the time of his plea negotiations").

Second, at the entry stage, the Court's colloquies with Mr. Armond and defense counsel at the aborted change of plea hearing again showed more diligence in ensuring Mr. Armond's voluntary acceptance of the waiver than the guiding Eighth Circuit cases

require. In *Washburn*, the Eighth Circuit held that while the district court could have conducted an inquiry into the voluntariness of the defendant's waiver prior to allowing the factual stipulation from his plea agreement into evidence, it was not required to do so based on similar facts. *Washburn*, 728 F.3d at 781. By contrast, this Court *did* conduct a voluntariness inquiry in the instant case. The Court first engaged in the inquiry upon sensing hesitancy from Mr. Armond at his change-of-plea hearing:

> THE COURT: [I]f you don't want to plead guilty, you don't have to do that. You can plead not guilty and we'll go to trial.
>
> Now, the complicated part of it is that between you and the government, you have entered into a written plea agreement and you have apparently agreed that certain statements in the plea agreement are true, so you would have to deal with that at the time of trial[ ].
>
> You would also have to deal with the idea of whether there are any consequences, collateral consequences, to you for breaching the plea agreement. . . .
>
> I would suggest that if you are concerned about your course of action today, we should probably take a recess so that you can visit more fully about this with [defense counsel].

(Doc. 26, pp. 9–10). The Court then recessed for approximately 30 minutes to allow Mr. Armond to do so. Afterwards, the Court re-engaged in the following colloquy with Mr. Armond's former counsel, Ms. Weber:

> THE COURT: Ms. Weber, have you had an opportunity to visit as long as you needed to with Mr. Armond?
>
> MS. WEBER: Yes. . . . [M]y client has decided he would like to take this to trial, You Honor. And I believe that [the Government] wants to make a record with respect to the fact that we do have a signed plea agreement and that plea agreement can be used against my client in cross-examination if he decides to testify.
>
> THE COURT: Yes. [ ] I will allow the government to make a record. I just want you to confirm something for me.

11

> With regard to the plea agreement, have you had an opportunity to specifically advise your client about paragraphs 9 and 10 under the heading of, "Effects of breach of this agreement by defendant," and specifically the waiver that has been, at least on its face, made pursuant to Rule 11(f) and Rule 410 of the Rules of Evidence? Have you specifically reviewed those paragraphs and those provisions with Mr. Armond?
>
> MS. WEBER: Your Honor, we had prior to this, but he is well aware that the admissions contained in the plea agreement by the effect of breaching the agreement can be used against him in trial.

*Id.* at pp. 11–12. These colloquies reach well beyond the requirements of *Washburn* to further indicate that Mr. Armond waived his Rule 410 protections knowingly and voluntarily.

To summarize, then: The Plea Agreement is explicit in requiring confirmations from the defendant and defense counsel that they have read, reviewed, and understand the agreement. Mr. Armond signed the agreement with the advice of his counsel. And the Court conducted lengthy, specific colloquies with Mr. Armond and his counsel about the effects of breach and the waiver provision. On these facts, the Court finds that Mr. Armond knowingly and voluntarily entered into the Plea Agreement. Moreover, Mr. Armond was given express notice of the potential consequences of breach, and Mr. Armond's understanding of those effects was affirmed on the record in open court during the aborted change of plea hearing.

## IV. CONCLUSION

For the reasons explained above, the Court finds that Mr. Armond waived his protections under Feder Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f) when he entered into the Plea Agreement. Admissions made by Mr. Armond in the Plea Agreement are admissible as substantive evidence in the Government's case-in-

chief and may also be used to impeach Mr. Armond's credibility as a witness if he elects to testify at trial. The admissibility of Mr. Armond's sworn statements during aborted change of plea are potentially admissible as well, but Rule 401 and 403 considerations would depend on the context in which the Government may seek to use any such statements during the trial. The Court will therefore defer a ruling as to those statements until the context of trial. The manner and format of how the Mr. Armond's admissions will be presented to the jury will be taken up by the Court at the pretrial conference on November 2, 2023.

Mr. Armond's Motion in Limine to Prevent Use of Statements from Plea Hearing (Doc. 42) is therefore **DENIED**.

**IT IS SO ORDERED** on this 2nd day of November, 2023.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE